UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **DOUCET-SPEER, APLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-513-SDD-RLB** |
| **STATE FARM FIRE AND CASUALTY COMPANY** | |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on March 10, 2021.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **DOUCET-SPEER, APLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-513-SDD-RLB** |
| **STATE FARM FIRE AND CASUALTY COMPANY** | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Plaintiff's Motion for Leave to Join Non Diverse Defendants & Alternatively for Remand to State Court ("Motion to Amend"). (R. Doc. 12). The motion is opposed. (R. Doc. 15).

### I.   Background

The instant insurance action arises out of alleged acts of fraud and theft of certain accounts held by Doucet-Speer, APLC ("DSA" or "Plaintiff") at MC Bank by various individuals: Michelle Mouton, Carla Toucheck, and Rowdy Whittington, and Ms. Moutan's husband, Paul Mouton (collectively, "MC Bank employees").

On or about July 3, 2020, DSA filed the instant action in the 19th Judicial District Court for the Parish of East Baton Rouge ("19th JDC") seeking recovery under an insurance policy issued by State Farm Fire & Casualty Company ("State Farm") for the losses incurred with respect to the alleged acts of the MC Bank employees. (R. Doc. 1-2 at 8-10). DSA alleges that the State Farm policy provides coverage for "(1) each occurrence of Employee Dishonesty causing DSA to sustain loss; (2) each occurrence of loss resulting from Forgery or Alteration of any check, draft, or promissory note, etc.; and (3) each occurrence of loss of Business Personal Property of others." (R. Doc. 1-2 at 9). DSA alleges that it timely reported these covered losses and State Farm has refused to pay under the policy. (R. Doc. 1-2 at 9). There is no dispute that

1

DSA submitted a sworn statement in support of proof of loss claiming a total loss of $2,389,212.84 and claiming $2,000,000 in coverage under the State Farm policy. (R. Doc. 12-3). DSA now seeks recovery of the alleged amounts due under the policy, plus penalties and attorneys' fees under Louisiana's bad faith statutes, La. R.S. 22:1892 and La R.S. 22:1973. (R.Doc. 1- 2 at 8-11). In its answer, State Farm represents that it paid $10,000 to DSA under the policy. (R. Doc. 3 at 15).

On or about July 17, 2020, DSA (and co-plaintiffs L.T.B.P., LLC and Jeffrey F. Speer) filed a separate suit in the 15th Judicial District Court for the Parish of Lafayette ("15th JDC"), naming as defendants MC Bank and the MC Bank employees. (R. Doc. 12-2; *see* R. Doc. 15 at 1). In this lawsuit, DSA and its co-plaintiffs are seeking recovery for the same alleged acts of theft, misappropriation, conversion, and embezzlement of funds from DSA that form the basis of DSA's lawsuit against State Farm. (*See* R. Doc. 12-2 at 2-7).

On August 11, 2020, State Farm removed the instant action from the 19th JDC, asserting that the Court has diversity jurisdiction under 28 U.S.C. § 1332. (R. Doc. 1). State Farm asserts that the amount in controversy requirement is satisfied because DSA is seeking recovery of $2,000,000 and that there is complete diversity because DSA is a citizen of Louisiana and State Farm is a citizen of Illinois. (R. Doc. 1 at 1-2).

On October 30, 2020, the Court held a status conference with the parties, and found it premature to issue a formal scheduling order in light of the issues raised by the pending litigation in state court that pertains to some of the same conduct at issue in this matter. (R. Doc. 11).

On December 1, 2020, DSA filed the instant Motion to Amend to add the MC Bank employees as defendants to this action. (R. Doc. 12; *see* R. Doc. 12-4). DSA does not seek to add Jeffery Speer or L.T.P.B., LLC, as plaintiffs, nor does DSA seek to add MC Bank as a defendant.

DSA seeks remand of the action after the addition of the MC Bank employees because they are citizens of Louisiana and their addition would destroy complete diversity.

## II.     Summary of Arguments

DSA primarily argues that it would be injured if it were required to prosecute parallel actions in federal and state courts due to a substantial risk of conflicting rulings and judgments. (R. Doc. 12 at 2; R. Doc. 12-1 at 2). DSA contends that the MC Bank employees should be added as defendants because if DSA is successful in obtaining a judgment, State Farm will have subrogation rights against those defendants. (R. Doc. 12-1 at 2). DSA also suggests that the MC Bank employees should be added because they have a Fifth Amendment privilege against self-discrimination. (R. Doc. 12 at 2; R. Doc. 12-1 at 2). DSA also argues that it was not dilatory in seeking amendment, noting that no discovery has been conducted and suggesting that the issue of parallel proceedings was not "recognized" until the October 30, 2020 status conference. (R. Doc. 12 at 3; R. Doc. 12-1 at 2). DSA suggests in a footnote that after remand to the 19th JDC, it would seek transfer of the instant action to the 15th JDC. (R. Doc. 12-1 at 2 at 3 n.1).

In opposition, State Farm argues that the Court should deny joinder of the non-diverse defendants under 28 U.S.C. § 1447(e) and the factors set forth in *Hensgens v. Deere & Co.*, 833 F.3d 1179, 1182 (5th Cir. 1987). (R. Doc. 15). First, State Farm argues that the primary purpose of DSA's motion is to defeat diversity jurisdiction given that DSA knew the identity of the MC Bank employees prior to filing the instant action and, nevertheless, chose to file a separate action against State Farm that would be subject to removal. (R. Doc. 15 at 4-7). Among other things, State Farm notes that remand of the action would still leave DSA with two separate state court actions that would need both transfer (following a contradictory *forum non convenient* motion) and consolidation. (R. Doc. 15 at 6-7). State Farm also notes that Plaintiff fails to seek the addition of all parties to the 15th JDC action (Jeffrey Speer, L.T.P.B., LLC, and MC Bank) as

3

additional parties to this action. (R. Doc. 15 at 7). Second, State Farm argues that DSA was not diligent in seeking amendment given its approximately five-month delay after the filing of the original petition and over three-month delay after removal before seeking amendment. (R. Doc. 15 at 7-8). Third, State Farm argues that DSA won't face any undue prejudice if amendment is denied because State Farm can satisfy any future judgment against it, State Farm controls how it would enforce any subrogation rights, and DSA made the conscious choice to initiate this action against State Farm in a separate proceeding than the 15th JDC action. (R. Doc. 15 at 8-10). Finally, State Farm argues that the equities favor denying amendment because DSA already chose to proceed in two different forums and the MC Bank employees can invoke any constitutional rights in both forums. (R. Doc. 15 at 10).

### III. Law and Analysis

#### A. Legal Standards

Amendments to pleadings are generally governed by Rule 15 of the Federal Rules of Civil Procedure. Under Rule 15, after the period for amendment as a matter of course elapses, "a party may amend its pleading only with the opposing party's written consent or the court's leave" and the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The rule "evinces a bias in favor of granting leave to amend." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S.A. Co.*, 195 F.3d 765, 770 (5th Cir. 1999) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981)). Although leave to amend should not be automatically granted, "[a] district court must possess a substantial reason to deny a request for leave to amend." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quotations omitted). In determining whether to grant leave, a court may consider several factors, including among other things, the movant's "bad faith or dilatory motive" and the "futility" of

4

the amendment. *Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1153 (5th Cir. 1981) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"It is within the district court's discretion to deny a motion to amend if it is futile." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000) (citations omitted). The "futility" of amendments to a complaint is measured by whether "the amended complaint would fail to state a claim upon which relief could be granted" under "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id*. at 873 (citations omitted).

Since joinder of a nondiverse defendant after removal would destroy diversity jurisdiction and require remand, a court has discretion to permit or deny joinder. *See* 28 U.S.C. § 1447(e) ("If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."). When an amendment seeks to add a nondiverse party that would destroy jurisdiction altogether in a removed action, the court must balance the factors as set forth in *Hensgens v. Deere & Co*., 833 F.2d 1179 (5th Cir. 1987). The court should "scrutinize that amendment more closely than an ordinary amendment" and should generally consider four factors to determine whether the amendment is appropriate: "[1] the extent to which the purpose of the amendment is to defeat federal jurisdiction, [2] whether plaintiff has been dilatory in asking for amendment, [3] whether plaintiff will be significantly injured if amendment is not allowed, and [4] any other factors bearing on the equities." *Id*. at 1182. If the court permits the addition of a nondiverse defendant, it must remand the action to the state court. *Id*.

### B. Analysis

The first *Hensgens* factor, the extent to which the purpose of an amendment is to defeat federal jurisdiction, weighs in favor of State Farm. Courts have found that "a plaintiff's failure to join a non-diverse defendant to an action prior to removal when such plaintiff knows of a non-

5

diverse party's identity and activities suggests that the purpose of the amendment is to destroy diversity jurisdiction." *See Tomlinson v. Allstate Indem. Co.*, No. 06-0617 2006 WL 1331541, at *3 (E.D. La. May 12, 2006) (quoting *Schindler v. Charles Schwab & Co., Inc.*, No. 05-0082, 2005 WL 1155862, at *3 (E.D. La. May 12, 2005)). In the instant case, DSA failed to join the MC Bank employees at the outset of this litigation despite knowing the identity and actions of these individuals before filing suit and removal. DSA also provides no explanation for its decision to file separate suits in the 19th JDC and the 15th JDC.

According to DSA, its motion to seek the addition of non-diverse plaintiffs was motivated by its realization of the dangers of parallel cases rather than to defeat diversity jurisdiction. The potential problems associated with parallel suits, like the possibility of inconsistent results and incomplete relief, were known to DSA prior to the filing of the two suits in different state forums. Before filing its suits, DSA had an opportunity to research and assess the benefits and drawbacks of different strategic options, including the possibility of parallel proceedings. The record indicates that the primary purpose of seeking amendment is to obtain remand of this action for the purposes of seeking transfer and consolidation of this action with the other state court proceeding. The purpose of amendment is not to obtain complete relief in this action, as evidenced by DSA's failure to seek leave to amend to add MC Bank as a defendant. These facts weight in favor of denying leave to amend.

The second *Hensgens* factor, whether plaintiff has been dilatory in seeking the amendment, also weighs in favor of denying leave to amend. In determining whether the plaintiff has been dilatory, "district courts often look to the amount of time that has passed between the filing of the original complaint and the amendment and the amount of time between the removal and the amendment." *Schindler*, 2005 WL 1155862. "Generally a plaintiff is not dilatory in seeking to amend a complaint when no trial or pre-trial dates [have been] scheduled and no

6

significant activity beyond the pleading stage has occurred." *Boyce v. CitiMortgage, Inc.*, 992 F. Supp. 2d 709,720 (W.D. Tex. 2014) (quotation and citation omitted). However, "the analysis is different when the proposed amendment is to add nondiverse defendants shortly after removal based on federal diversity jurisdiction." *Gallegos v. Safeco Ins. Co. of Indiana*, No. 09-2777, 2009 WL 4730570, at *4 (S.D. Tex. Dec. 7, 2009). In some cases, "[a] delay of two months after the filing of the original complaint or almost thirty days after the notice of removal has been found dilatory." *Id. See Irigoyen v. State Farm Lloyds*, No. 03-324, 2004 WL 398553, at *4 (S.D. Tex. Jan. 5, 2004) (finding dilatory motion to amend filed three and a half months after the original complaint and two and a half months after removal).

  Here, the Court declined to issue a scheduling order in light of the issues raised in the instant motion. (R. Doc. 11). DSA appears to argue that it is not dilatory in seeking amendment because it first recognized the risks of parallel proceedings at the status conference. The Court rejects that argument. DSA inexplicably waited one month after the status conference to file the instant motion, which was filed approximately five months after the original Petition was filed and over three months after removal of the action. Given that DSA was aware of the issues raised by separate proceedings in state court and federal court since at least the time of removal, the Court finds the filing of the instant motion to be dilatory.

  The third *Hensgens* factor, whether the plaintiff will be significantly injured, weighs in favor of State Farm. Courts consider whether the already named diverse defendant would be unable to satisfy a future judgment, whether the plaintiff could recover against the proposed non-diverse defendants, and whether the possibility of a separate state court proceeding would lead to inefficiencies or financial burdens on the plaintiff. *Gallegos*, 2009 WL 4730570, at *5; *see also Joseph v. Fluor Corp.*, 513 F. Supp. 2d 664, 670 (E.D. La. 2007) (considering costs, judicial efficiency, and possibility inconsistency of results). Here, it does not appear that the plaintiff's

ability to recover against any set of defendants is a problem. There is no indication that State Farm would be unable to satisfy a judgment against it for insurance proceeds and bad faith damages. Additionally, while DSA may be able to recover from the MC Bank employees if added to this proceeding, there is no indication that DSA will be unable to recover from the MC Bank employees in the 15th JDC action. Furthermore, whether State Farm obtains subrogation rights against any other individuals or entities has no bearing on whether DSA will face any burden. Finally, DSA's initial decision to file separate state court lawsuits undercuts its current argument that the factors of cost, judicial efficiency, and the possibility of inconsistent results support amendment and remand. DSA would face the same issues if both actions (which were filed in separate state courts) were both pending in state court. DSA raises no argument in support of a finding that any motion to transfer the instant action to the 15th JDC would be successful.

The fourth and final factor, which focuses on other equitable considerations, does not clearly support either party. DSA references that some MC Bank employees may invoke their Fifth Amendment protection against self-incrimination. State Farm counters that it is not clear how maintaining a federal and state proceeding rather than two state proceedings prevents the invocation of the constitutional rights. State Farm again argues that DSA made the decision to file two separate lawsuits. These equitable considerations are fairly neutral.

In sum, there is no dispute that DSA is seeking amendment of this action for the sole purpose of obtaining remand to then seek transfer of this action and consolidation of the two related actions. Plaintiff was dilatory in seeking this relief. Any prejudice that DSA faces as a plaintiff in both a federal proceeding and a state proceeding on the related actions is its own doing. Denial of DSA's motion is appropriate under the *Hensgens* factors.

## IV. Conclusion

Based on the foregoing,

**IT IS RECOMMENDED** that Plaintiff's Motion for Leave to Join Non Diverse Defendants & Alternatively for Remand to State Court (R. Doc. 12) be **DENIED**.

Signed in Baton Rouge, Louisiana, on March 10, 2021.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**